IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| PATRICE FARMER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No.: 1:10-cv-956 |
| ) | |
| THE UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Patrice Farmer ("Farmer") brought this suit against the Secretary of the United States Department of Agriculture ("USDA")[1] for disability discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* (the "Rehabilitation Act"),[2] and for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff has subsequently withdrawn her claim for retaliation. Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 5. This matter comes now before the Court on USDA's Motion for Summary Judgment on the remaining claim for disability discrimination. Dkt. No. 21. The parties have

---

[1] Farmer has named "the United States of America" as the defendant in her action. The statute under which she asserts her claim specifies that the proper defendant is the "head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 794a(a)(1). The proper party defendant is, therefore, the Secretary of the United States Department of Agriculture.

[2] Farmer's Complaint alleges disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, but the Rehabilitation Act is "the exclusive means" by which a plaintiff may raise claims of disability discrimination in federal employment. *Hockaday v. Brownlee*, 370 F. Supp. 2d 416, 422 (E.D. Va. 2004). This Court therefore construes this claim as arising under the Rehabilitation Act.

fully briefed the Motion, and the matter is ripe for disposition. For reasons stated in this Memorandum Opinion, the Court grants USDA's Motion.

## JURISDICTION AND VENUE

Farmer brought this action to redress alleged deprivations of her rights under the Rehabilitation Act. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

A substantial part of the events or omissions giving rise to this claim occurred within the Eastern District of Virginia. Venue therefore lies in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL HISTORY

The undisputed facts of the case are as follows. On February 12, 2009, USDA hired Farmer to work as a program analyst in Alexandria, Virginia. Farmer's appointment was career conditional, subject to a one-year probationary period. Farmer began work on March 2, 2009.

As a program analyst, Farmer's general duties included spreadsheet work, analysis, and the preparation of memoranda informing state agencies of reporting requirements. Farmer's work focused on the allocation of USDA funds received pursuant to the American Recovery and Reinvestment Act ("ARRA").

Farmer's immediate supervisor at USDA was Patricia Davis ("Davis"). Soon after she started at USDA, Farmer told Davis she could build databases, and she volunteered to build a database for the "Women, Infants, and Children Program," to track and report ARRA funding. Farmer continued to work on the database for over two months, and Davis became concerned about her progress. Farmer never completed the project, despite spending the majority of her time up through June 2009 on the database assignment. Davis had to seek the help of the information technology group in order to complete the project. Through her first several months at USDA, Farmer also made repeated typographical and formatting errors in her work.

2

On June 10, 2009, T. Geoffrey Gay, an employee in the human resources division at USDA ("HR"), sent Davis an email regarding Farmer's conduct at a work function held the prior week at the Capital Area Food Bank. An attendee of the function reported that Farmer had opened a sealed crate of juice boxes, and had removed two boxes. Farmer then told a food bank representative that she was taking the juice boxes because her coworkers wanted souvenirs. Gay believed the incident reflected poorly on USDA.

Later that month, Davis and another supervisor, Joan Carroll ("Carroll"), met with Farmer to discuss her deficient performance. They instructed Farmer to proofread her work, to conduct more thorough research, to achieve greater familiarity with USDA programs, to listen more closely to instructions, and to pay attention to office culture. By the middle of the summer, according to Carroll's deposition testimony, Davis and Carroll discussed terminating Farmer if her performance did not improve.

Farmer's work did not improve. In the months that followed, Farmer struggled with simple assignments, and her work continued to be riddled with errors.[3] Moreover, during the first week of July, a USDA employee informed Davis that Farmer was falsifying her arrival time on her sign-in sheets. Davis subsequently witnessed Farmer "signing in" for times earlier than

---

[3] To cite only a few examples from the record: In late July, Farmer was assigned to write a memorandum, and she was given two sample memoranda as guides. Despite the expectation that the assignment would be simple, Farmer went through four drafts of the memorandum over the course of six weeks. Each draft included several typographical, punctuation, and grammatical errors. Davis provided extensive comments on each draft. Farmer failed to incorporate the comments and correct the errors. The project was ultimately assigned to another program analyst. Def.'s Mem. in Supp. of Summ. J. ("Def.'s Mem."), Ex. 5c.

In August, Farmer was asked to prepare a simple spreadsheet. Her first draft of the spreadsheet included incorrect data values, data titles, and formatting. Her second draft corrected only some of the data values, and did not correct the formatting and titling errors. Def.'s Mem., Ex. 5j.

her actual arrival. Davis contacted an employee in HR, Frank Curnow ("Curnow"), to communicate her concerns with Farmer.

On August 6, 2009, Davis and Carroll conducted Farmer's mid-year performance review, and explained to Farmer that her work thus far was unsatisfactory. Davis gave Farmer multiple examples of her subpar performance, including her failure to complete the database project; the numerous grammatical, organizational, and sentence structure errors that appeared in her work; her conduct at the food bank; and her falsification of sign-in times. Davis and Carroll indicated to Farmer that if she did not begin performing at a higher level, she would be terminated.

By the end of the summer, it was clear that Farmer's work product was not improving, and, according to Carroll's deposition testimony, Davis made the final decision to fire Farmer. Def.'s Mem. in Supp. of Summ. J. ("Def.'s Mem."), Ex. 3, Dep. of Joan Carroll ("Carroll Dep.") 22-23. On August 28, Davis sent an email to Curnow informing him that she and Carroll were "summarizing [their] documentation" in support of Farmer's termination. Def.'s Mem., Ex. 8, Aug. 28, 2009 Email to Frank Curnow; Def.'s Mem., Ex. 9., Dec. of Patricia Davis ¶ 5. In the months that followed, Davis and Kim O'Bryant ("O'Bryant"), another HR employee, communicated in-person, by telephone, and by email regarding Davis's decision to terminate Farmer.

On September 23, 2009, Davis and Carroll held a meeting with Farmer to discuss Farmer's poor performance on another project. In the meeting, Farmer stated that she had a disability, though she did not identify what that disability was.[4] This was the first time Farmer

---

[4] According to Farmer's deposition testimony, Farmer was diagnosed with chronic depression, attention deficit hyperactivity disorder, and bipolar disorder in July 2009. Def.'s Mem., Ex. 20, Dep. of Patrice Farmer 13. The following month, Farmer began taking Wellbutrin and Adderall, which she claims impacted her ability to focus, and caused her to make proofreading mistakes. *Id.* at 14, 17.

told anyone at USDA that she was disabled or held a medical or physical impairment. The parties offer differing accounts of what occurred next. Farmer alleges that Davis said the following:

> "If I knew you had a disability, I would never have hired you. In fact, I'm going to Human Resources right now to see if I can have someone fired with a disability. I wouldn't trust you in 10 years with ARRA activity . . . . You need to find another job. Because you have a disability, you can't do this job."

Pl.'s Opp'n, Ex. 1, Dec. of Patrice Farmer ¶ 4. Both Carroll and Davis deny that Davis made any such statement. Carroll Dep. 20-21; Def.'s Mem., Ex. 2, Dep. of Patricia Davis ("Davis Dep.") 41.

On October 15, 2009, Davis met with union representatives Patricia Maggi and Robin Young regarding Farmer. Davis informed them that Farmer's performance conduct was unsatisfactory, and she provided them with documentation demonstrating how management was forced to review and edit multiple versions of Farmer's work. She also told them that Farmer had stolen juice from the food bank at a work function. Following the meeting, Young asked Farmer to provide proof that she was performing her job satisfactorily. Farmer provided a write-up of her work assignments, but that write-up did not address the specific issues Davis had raised in the October 15 meeting. Young is of the opinion that Farmer misrepresented her work to the union.

Davis met with Farmer on October 23 to inform her of the termination decision. During the meeting, Davis reviewed a letter with Farmer that explained the basis for Farmer's termination. The letter catalogued the various deficiencies in Farmer's performance including her poor analytical and reading comprehension abilities, her failure to complete assignments, and her unacceptable written communication skills. The letter also mentioned conduct issues, including the food bank incident and her falsification of time sheets.

5

## DISCUSSION

1. Standard on Summary Judgment

A court may grant summary judgment only if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. A fact is "material" only if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the party opposing the motion must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52. The party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to materials in the record, including depositions, documents, and affidavits, or by demonstrating that the materials cited by the opposing party do not establish the presence or absence of a genuine dispute. FED. R. CIV. P. 56.

2. Farmer's Rehabilitation Act claim

Farmer claims that USDA discriminated against her on the basis of her disability in violation of the Rehabilitation Act. A plaintiff alleging such unlawful discrimination may prove her case either through direct evidence of discrimination, or through the analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

a. Direct evidence analysis

When a plaintiff proceeds with her claim through presentation of direct evidence, she must, to survive summary judgment, provide evidence, the "cumulative probative force" of which "supports a reasonable inference that [the] discharge was discriminatory." *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996) (quoting *Lawrence v. Mars, Inc.*, 955 F.2d 902, 905-06 (4th Cir. 1992), *cert. denied*, 506 U.S. 823 (1992)). Even if a plaintiff provides evidence to show that impermissible considerations motivated an employer's adverse action, the employer is nonetheless entitled to summary judgment if the record demonstrates that the employer would have taken the adverse action regardless of any impermissible considerations. *E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 164 (4th Cir. 2004).

In the present case, the record demonstrates that Davis would have terminated Farmer irrespective of any discriminatory motives stemming from Farmer's alleged disability. By Farmer's own admission, September 23 was the first time Farmer told anyone at USDA that she was disabled or had a mental impairment. Davis testified that she had already made the decision to terminate Farmer by that date, Davis Dep. 36, and the uncontroverted evidence in the record strongly supports this testimony. Throughout her tenure, Farmer's work product was consistently poor. She stole juice from a food bank during a work function, and Davis witnessed her falsifying her time reports. At the time of the alleged incident on September 23, Davis had been compiling documentation supporting her termination decision for at least one month, and Davis and HR were already engaged in regular communications regarding Davis's resolution to terminate Farmer. Carroll affirmed in her deposition testimony that Davis had made the final decision to fire Farmer by the end of the summer. On this record evidence, no reasonable juror could find that Davis terminated Farmer due to her alleged disability. In other words, USDA is

entitled to summary judgment because the record demonstrates that USDA would have terminated Farmer irrespective of her alleged disability.

### b. *McDonnell Douglas* analysis

The other method through which Farmer could assert her discrimination claim is the analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to establish a *prima facie* violation of the Rehabilitation Act, a plaintiff must prove: "(1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability." *Doe v. Univ. of Maryland Med. Sys. Corp.*, 50 F.3d 1261, 1265 (4th Cir. 1995).

If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Should the defendant satisfy this burden, the plaintiff must then prove, by a preponderance of the evidence, that the defendant's articulated reasons were a pretext for discrimination. *Burdine*, 450 U.S. at 253. In any event, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.*

Assuming for the purposes of this Motion that Farmer can establish the first two prongs of her *prima facie* case, she cannot, for reasons stated in Section 2(a), *supra*, establish that USDA terminated her due to discrimination solely on the basis of her alleged disability. The record demonstrates that Davis decided to terminate Farmer prior to learning of Farmer's

disability. Moreover, even if Davis could make such a showing, the record is replete with evidence of legitimate, non-discriminatory reasons for Farmer's termination. This Court therefore holds that Farmer cannot proceed with her claim under the *McDonnell Douglas* framework.

## CONCLUSION

For the foregoing reasons, USDA's Motion for Summary Judgment is granted.

Alexandria, Virginia
May 23, 2011

/s/ *[signature]*
Liam O'Grady
United States District Judge